Elmira P. Risher and Alvin D. Risher, Executors of Levi Risher, Deceased, *v.* John M. Risher and Stephen S. Crump, as Individuals and as Attorneys in Fact, Appellants.

*Payment—Appropriation of payments—Debtor and creditor.*

A debtor may appropriate his payments as he sees fit at the time he makes them. If he make no appropriation the creditor can make it on one or more of several obligations; if neither the debtor nor the creditor make an appropriation, then the law will make one to the debts oldest in point of time. Where the debtor makes no appropriation the creditor may apply the payment to that item of debt which to him seems least secure.

Where a debtor who is liable to a creditor on several obligations assigns to him an interest in a mortgage, and records the assignment, which contains no terms as to the application of the amount, and the creditor accepts the payment and formally notifies the debtor of the appropriation of the payment to a particular indebtedness, the debtor cannot, ten days afterwards, object to such appropriation.

Argued Oct. 31, 1899. Appeal, No. 80, Oct. T., 1899, by defendants, from decree of C. P. No. 2, Allegheny Co., July T., 1897, No. 644, on bill in equity. Before GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Bill in equity for an account. Before WHITE, P. J.

The case was referred to D. F. Patterson, Esq., who reported the facts to be as follows:

In the spring of 1897, John M. Risher, one of the defendants, was indebted to each of his three codistributees, in part, at least, on account of his having drawn out more than his distributive share of the funds received by defendants as attorneys in fact. On April 14, 1897, he executed the writing in evidence marked exhibit No. 10, and had the same recorded April 29. It is an assignment to his three codistributees of his interest in the mortgage of the United States Glass Company upon the property sold to it through the agency of Black & Baird, which was made directly to the four distributees to secure the unpaid purchase money owing on that sale. The amount then owing on the mortgage was $130,370.63, of which John M. Risher was entitled to receive one fourth, being $32,592.66. The amount

thereof assigned to each of his codistributees by exhibit No. 10 was, therefore, $10,864.22. That relates only to the glass company mortgage. The assignment includes three other small mortgages, about which no testimony was taken, nor any information furnished to the referee. The preamble expressly acknowledges that the assignor is indebted to each of his codistributees " in a sum of money exceeding the interest in the mortgages hereby assigned," and the express purpose of the assignment is " to secure to said parties the payment of said indebtedness." The writing furnishes no information about the source of said indebtedness; and, while it recites that the indebtedness exceeds the amount assigned, it indicates no purpose to appropriate the amount assigned to any particular item or items of said indebtedness.

Plaintiffs claim that they had no notice of said assignment until their counsel, N. A. Means, Esq., informed them that it was recorded, and that they then promptly executed the writing in evidence marked exhibit No. 6, which they caused to be served upon John M. Risher on May 10, 1897, it being a notice that plaintiffs accept the interest assigned to them by exhibit No. 10, and elect to apply the same when paid as a credit on two promissory notes made by said Risher; one for $10,600, dated January 1, 1890, the other for $5,000, dated June 20, 1891. To this notice John M. Risher responded by serving upon the plaintiffs the writing in evidence marked exhibit No. 8, dated May 20, 1897, being an acknowledgment of the receipt of exhibit No. 6, and notice that Risher had himself, at the time the assignment was made, directed the assignment to be applied " to the reduction of his indebtedness to the estate of John C. Risher, deceased, in which Levi Risher held a one-fourth interest; " and it further informs plaintiffs that said Risher's interest in certain articles of agreement for the sale of land, coal lease and other leases and other securities, as well as the mortgages referred to in their notice, had been assigned for the purpose of reducing the assignor's indebtedness to the estate of Levi Risher, deceased, " or more properly to equalize the shares of the estate of Levi Risher, the estate of Agnes M. Crump, and Sarah C. Snodgrass, with the amount of money received by John M. Risher," who is stated to have received more of the estate of John C. Risher than the other three parties in interest.

The further assignment of which plaintiffs were notified by exhibit No. 8 is the writing in evidence marked exhibit No. 9, dated April 14, 1897, being an assignment by John M. Risher to his three codistributees of his one-fourth interest in certain agreements for sale of lots, certain leases and other securities. This writing distinctly recites that John M. Risher had received from his father's estate $47,557.75 in excess of the amounts received by his codistributees, of which sum $29,183.38 is due the executors of Levi Risher's estate, $4,177.85 to S. S. Crump, executor and devisee of Agnes M. Crump, and $14,196.52 to Sarah C. Snodgrass; and the assignment is made in consideration of said indebtedness, and of $1.00, with a specific direction to apply the moneys derived from the securities assigned to the reduction of said indebtedness. This writing has never been recorded, was never exhibited to the plaintiffs, and they claim they had no notice of it until they received exhibit No. 8.

In their distribution account, the defendants have charged each of the distributees, except John M. Risher, with one third of the glass company's mortgage at the date of the assignment of said Risher's interest therein, to wit: $43,456.87, being the original fourth of each, to wit: $32,592.66, with one third of said Risher's fourth, to wit: $10,864.22, added. The plaintiffs claim that this charge against them, to the extent of the $10,864.22, is erroneous, as they had legally applied that sum to the two notes of Risher mentioned in their notice of application, being exhibit No. 6.

The first of those notes is in evidence marked as exhibit 4, dated January 1, 1890, made by John M. Risher for $10,600, payable one year after date, with interest, to the estate of John C. Risher, and indorsed as follows, to wit: " Pay Levi Risher or order, John M. Risher, S. S. Crump, executors." There is no dispute that, at the date of this note, John M. Risher had drawn from the funds of his father's estate more than his distributive share, and that he then paid Mrs. Crump and Mrs. Snodgrass the sums required to equalize their drawings with his, and that it required $10,600 to be paid by him to his brother, Levi, to make their drawings equal. Instead of paying cash to Levi, he made his note to his father's estate, and then the defendants indorsed it as executors and delivered it to Levi, and Levi executed and delivered a receipt of which the following is a copy, to wit:

"DRAVOSBURG, January 1, 1890.

"Received estate of John C. Risher ten thousand six hundred dollars (being J. M. Risher's note of this date at one year) and on a'c of my interest in the estate.

"$10,600.                                    LEVI RISHER."

Six credits of interest are entered on the back of the note, the last being on July 1, 1896.

The referee's conclusion of law was as follows:

I am of opinion, and find as matter of law, that John M. Risher failed to make application of the plaintiff's share of the mortgage interests assigned by him to them on April 14, 1897, to any particular debt then owing by him to them, and that plaintiffs' application thereof to the $10,600 note and $5,000 note, on May 10, 1897, with notice thereof to Risher, was a legal application that must be respected in the determination of this case.

Exceptions to the referee's report were overruled, and a decree made in accordance with his recommendation.

*Error assigned* was the decree of the court.

*W. B. Rodgers* and *J. S. Ferguson*, with them *E. G. Ferguson*, for appellants.—The direction on the part of the debtor to make application of his payment to a particular debt need not be express; it may be implied from circumstances: West Branch Bank v. Moorehead, 5 W. & S. 542; Pardee v. Markle, 111 Pa. 548. True, he must, at some stage of the case, have notice of them. But if shown to have existed before his election, he cannot ignore them, because not known at the time to him.

*W. P. Potter*, with him *William A. Stone* and *N. A. Means*, for appellees.—The question of the application or appropriation of payments arises where a creditor receives a payment which is insufficient to discharge entirely the obligation of his debtor, and especially where the indebtedness consists of two or more distinct claims. In such cases the debtor has the right to prescribe the manner in which it shall be applied towards the discharge of his indebtedness. He may apply it most beneficially to himself by preferring principal to interest, secure to the unsecure debt, or legal to equitable debts.

Where the creditor holds two debts, one secured by mortgage and the other not, he may apply undirected payments to the latter: Driver v. Fortner, 5 Port. (Ala.) 9; Bell v. Radcliff, 32 Ark. 645; Lewis v. Mfg. Co., 56 Conn. 25; Van Sickle v. Ayers, 6 N. J. Eq. 29; Bird v. Davis, 14 N. J. Eq. 467; Wadlinger v. Building Assn., 153 Pa. 622; L'Hommedieu v. Dayton, 38 Fed. Rep. 926; Bosanquet v. Wray, 6 Taunt. 597; Birch v. Tebbutt, 2 Stark. 74; Moore v. Kiff, 78 Pa. 96.

Where neither party makes any appropriation of the sum paid, the law appropriates said sums to the payment of the oldest bills in their numerical order: Louisville Cotton Mills Co. v. Fritz, 155 Pa. 144; Hildreth & Co. v. Davis, 6 Kulp, 336; Souder v. Schechterly, 91 Pa. 86; Pardee v. Markle, 111 Pa. 548; Reed v. Ward, 22 Pa. 144; Hollister v. Davis, 54 Pa. 508; Johnson's App., 37 Pa. 274.

The cases in which this subject is treated are strongly against the right of the debtor to make an application of a payment without communicating his intentions to the creditor: Frazer v. Bunn, 34 Eng. Com. L. R. 592; Heilbron v. Bissell, Bailey's Eq. (S. C.) 430; Martin v. Draher, 5 Watts, 544; Watt & Company v. Hoch, 25 Pa. 411; Logan v. Mason, 6 W. & S. 9; Guthrie's App., 92 Pa. 269.

OPINION BY MR. JUSTICE DEAN, December 30, 1899:

The facts in this case have been fully and clearly stated by the learned referee. A number of the points in controversy decided in the court below are practically eliminated here on this appeal, because not pressed in the argument. In fact, but one is left about which there is any serious contention, to wit: was the sum of $10,858.22, the interest of John M. Risher in the Glassport mortgage, and by him assigned to appellees, legally appropriated by the assignees of that interest?

The assignment was made April 14, 1897, and placed on record April 29, fifteen days afterwards. The assignor made no specific appropriation of the amount to any particular indebtedness of his to the assignees, while the aggregate indebtedness was in a much larger amount, made up of several items and based on obligations different in character. Nor did he even, give personal notice to the assignees, that he had made such assignment. On May 10 following, having for the first

time learned of the assignment, the assignees immediately gave notice to John M. Risher that they accepted it and would apply the amount embraced in it in part payment of his two promissory notes, one in sum of $10,000, dated January 1, 1890, the other dated June 20, 1891, in sum of $5,000, which notes had been given by him, the drawer, to Levi Risher, their testator. To this notice John M. replied in writing, that he had appropriated the amount to the reduction of his indebtedness to the estate of John C. Risher, in which the testator of assignees had a one-fourth interest.

It obviously was not to the interest of John M. to appropriate the assignment towards payment of the notes. John C. Risher, the father, had died in 1889, leaving a very large estate to his four children, Levi, John M., Agnes and Sarah. Levi died in 1894, leaving his interest in his father's estate to these assignees. John M., at the date of these notes, had largely overdrawn his share of the ancestral estate; he had settled his shortage at that date with his brother and colegatee, by giving these notes; afterwards he became still further indebted by overdrafts in a large sum on the same fund. In settlement of the present account prayed for, the respondents charge the representatives of Levi Risher with the one-fourth interest passed by the assignment of the Glassport mortgage, which of course would reduce the later overdraft $10,858.22, leaving the old overdraft outstanding and resting on the two notes; defendants consequently would have to account for and pay over just that much less.

The first question raised in the contention was one of fact; was there any appropriation of the money by John M. at the time he made the assignment or afterwards. before the creditors, these appellees, made an appropriation of it? There was some evidence that at the time of the assignment John M. intended to apply it to his then existing indebtedness to the estate, treating the notes given for the old shortage as a payment of Levi's share of that shortage; making it applicable to the later and existing indebtedness, would tend to equalize the present distribution among the colegatees. But the evidence, both as to the existence of such intention and as to its having been communicated verbally to these appellees at the time of the assignment, is contradictory. The referee finds as a fact, that if

such intention was in the mind of John M. at the date of the assignment, it was not communicated to the assignees; that they did not know such assignment had been made until May 10, following, and that then they immediately communicated to John M. their acceptance, and signified their appropriation of it to the old indebtedness on the notes. There was ample testimony, although some of it contradictory, to warrant this finding; it has been approved, after hearing, by the court below; a careful examination of the testimony not only convinces us it was not manifestly wrong, but that it was right. We then have the fact of a general assignment of the interest in a mortgage to creditors having a much larger aggregate claim, without notice by the debtor of an application of it by him to any particular debt; and an application by the creditors of the amount in part payment of a particular part of his obligation.

The rule in this state, as held by the referee and court below, is, that a debtor may appropriate his payments as he sees fit at the time he makes them; if he makes none, the creditor can make such appropriation on one or more of several obligations; if neither, at the time of payment, make such appropriation, then the law will make one to the debts oldest in point of time: Souder v. Schechterly, 91 Pa. 86; Pardee v. Markle, 111 Pa. 548, and many other cases. Where the debtor makes no appropriation, and the creditor does so, the latter may apply it to that item of debt which to him seems least secure: Reed v. Ward, 22 Pa. 144; Hollister v. Davis, 54 Pa. 508. It has been held that, even where one claim is barred by the statute of limitations and the other not, the creditor may apply the undirected payment to the debt barred and sue upon the other: Wait's Actions & Defenses, 416. No case in this state has gone that far, nor is it necessary to here decide that point; we cite the ruling only as illustrating the tendency of the courts to vest a wide discretion in the creditor in the absence of appropriation by the debtor. The rule could not be more concisely stated than in Martin v. Draher, 5 Watts, 544: "The debtor when he pays may insist on a credit on a particular amount, and unless he gets it may withhold his money. If nothing is said or agreed beforehand as to which debt the payment is to be applied, the creditor may apply it to either at his option."

It is earnestly argued, that even if express notice were not

given to the assignees of the intention of John M. to apply the assignment to the indebtedness subsequent to the notes, that intention is plainly to be inferred from all the dealings of John M. with the legatees, and that express notice to the assignees of the mortgage was not required. It is probably a reasonably fair inference that John M. did not intend an appropriation of his interest in the mortgage in payment of the old notes, and that possibly he intended at some future time to signify to the assignees his request for a credit on his after indebtedness. But there was no payment at all until a delivery of the assignment. When was it delivered, so far as concerned the assignor? Clearly on April 29, the day it was recorded; as concerns the assignees, as soon as they had notice of the record, if they did not within a reasonable time dissent to the payment or the application of it. Between the day of record and May 10 following, they had actual notice that it was recorded; they knew it was on its face a general payment, with no terms as to application of the amount; they did not dissent, but expressly accepted the payment, and formally notified the assignor of such acceptance, and their application of the payment; ten days afterwards, the assignor objects to the appropriation. He was too late. Without a word indicating his intention to pay a particular debt out of a large number of obligations, he in effect hands to his creditor more than $10,000 as payment of his indebtedness. The creditor accepts the money, and notifies him it has been appropriated to a particular item of the indebtedness. That closed the transaction, irrevocably, as to both debtor and creditor. As is said in Martin v. Draher, supra, " The debtor when he pays may insist on a credit on a particular amount, and unless he gets it, may withhold his money;" but he cannot pay his money without stipulations, then after notice that the creditor has exercised his right insist on changing or controlling the appropriation. The question of notice under these facts is of no importance; the debtor paid; the creditor accepted and appropriated, and therefore had notice.

We cannot sustain any of the assignments of error, and the decree of the court below is affirmed.